No. 26,618.

J. F. CUSTENBORDER, *Appellee,* v. ALEX CUNNINGHAM et al.,
*Appellants.*

SYLLABUS BY THE COURT.

VENDOR AND PURCHASER—*Rescission—Action to Recover Partial Payments—
Failure to Produce Title.* In an action to recover certain partial payments
on a tract of land which had been the subject of a contract of purchase and
sale between plaintiff and defendant, which contract was not consummated,
the record examined and held to show that plaintiff's failure to produce the
full purchase price in cash was caused through the fault of defendant in
not producing a title upon which a mortgage loan could be raised, as both
parties to the contract contemplated and understood the arrangement for
part of the purchase price should be; and held that plaintiff was entitled to
judgment for the return of the money paid to defendant upon the pur-
chase price.

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE,
judge. Opinion filed July 10, 1926. Affirmed.

*Tinkham Veale* and *Ralph H. Gaw,* both of Topeka, for the appellants.
*J. J. Schenck* and *W. E. Atchison,* both of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover certain payments on
the purchase price of a tract of land where the sale failed of con-
summation, and the main question was whether such failure was
due to the fault of the buyer or the seller.

Briefly the facts were these: Defendant was the equitable owner
of ten acres of land near Topeka. In January, 1922, he listed it for
sale with one Bert Rucker. Rucker, as agent of defendant, leased it
to Allee Brothers at $25 per month for one year, expiring March 1,
1923, and in the written contract of lease, in consideration of $50
paid by the lessees, Rucker gave them an option to purchase it, viz.:

"Tenth. *Additional Stipulations.* It is further agreed between the parties
to the within lease, that the second parties have the option to buy the within-
described land any time during the life of this lease, at the price of $5,000."

Allee Brothers entered into possession, but the contract of lease
was not recorded.

In July, 1922, defendant, through another real-estate agent, W.

Vendor and Purchaser, 39 Cyc. p. 2029 n. 68; L. R. A. 1918B, 554; 27 R. C.
L. 623.

Custenborder v. Cunningham.

T. Dawson, contracted to sell the ten acres to plaintiff for $4,500, of which $200 was paid down as earnest money, and the balance, $4,300, was to be paid on or before July 15, 1922, in cash.

The written contract of sale provided that the property was to be conveyed—

"In fee simple, clear of all encumbrances whatever (except as hereinafter mentioned) by a general warranty deed, and an abstract showing good merchantable title. . . .. Sale is subject to lease now in force, second party to get rent from date of delivery of deed.

"It is understood and agreed that the deed to said property is to be executed at once and placed in escrow with W. T. Dawson & Co., and all deferred payments (except encumbrances assumed) are to be paid through said W. T. Dawson & Co. . . . And in case of the failure of the said party of the second part to make either of the payments, or perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the party of the first part, be forfeited and determined, and the party of the second part shall forfeit all payments made by him on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by him sustained. . . .

"It is hereby agreed that time is the essence of this contract, and all payments must be made promptly in accordance with the terms hereof."

It was orally understood between plaintiff and defendant's agent that a considerable part of the purchase price plaintiff had agreed to give was to be raised by a mortgage on the property; but when plaintiff applied for a loan the title was subjected to a careful scrutiny by the loan company and by that time the lease to Allee Brothers had been recorded and it showed an option to purchase held by Allee Brothers. This caused the application for the loan to be rejected. At one time and another plaintiff paid to defendant on the purchase price the sums of $200, $163, and $500—$863 in all, but since a loan could not be procured and the sale consummated as the parties intended, plaintiff demanded a return of his money. It being withheld, this lawsuit followed.

The issues between plaintiff and defendant were defined in lengthy pleadings. Allee Brothers were impleaded and set up their option.

Plaintiff's evidence tended to show that the Allee Brothers' option was concealed from him, and that defendant's agent, W. T. Dawson, did not know of that option, and the contract between plaintiff and defendant for the purchase of the property was executed a week or two prior to the recording of Allee Brothers' lease in which the option privilege was included. Part of the evidence tended to show

27—121 Kan.

that defendant himself did not know that his first agent, Rucker, had inserted the option privilege in the contract of lease, and when he did hear of it he repudiated it. A witness testified:

"Q. What did Mr. Cunningham say about that? A. Mr. Cunningham says: 'I don't know anything about that; I want to repudiate this paper.'"

The cause was tried by the court without a jury. Extended findings of fact and conclusions of law were made. Part of these read:

"8. On or about the 1st day of July, 1922, the plaintiff, J. F. Custenborder, entered into a written contract with the defendant Alex Cunningham, through his duly authorized agent, W. T. Dawson, by the terms of which plaintiff agreed to purchase from the defendant the land heretofore described. . . .

"9. Prior to and at the time said contract was entered into, said W. T. Dawson, the duly authorized agent of Alex Cunningham, represented to plaintiff, for the purpose of inducing him to enter into said contract, that Alex Cunningham was the owner of the land, had a good merchantable title thereto, and was able to furnish an abstract of title showing a good merchantable title in him, by reason of which representation plaintiff was induced to enter into said contract. . . .

"11. At the time of entering into the negotiations for the purchase of the tract in question, the plaintiff informed W. T. Dawson that he intended to raise part of the purchase price by procuring a loan upon the property in question and mortgaging the same as security therefor; that shortly after the execution of the contract of purchase Custenborder caused an agent of the Farm Mortgage Trust Company of Topeka, Kansas, to inspect the property for the purpose of procuring a loan, and the loan was approved subject to the approval of the title to the property. The title was examined by the mortgage company and certain requirements made.

"Later another application for a larger loan of $2,000 was made and the abstract of title brought down to date, and the title was again examined and it was found that it showed that the lease which had been placed of record by the Allees on July 21, 1922, contained an option to purchase the land. Thereupon the loan company refused to make the loan with the Allees' outstanding option of purchase of record, and suggested that a quitclaim deed be furnished by the Allees, which suggestion was not complied with. The loan company has refused to make the loan because of the Allees' option of purchase contained in the lease and their questionable rights thereunder, they also being in possession of the premises.

"12. Had the title to the premises been such that Custenborder could have procured the loan upon the land as intended, he would have been in a position to have completed the payments of the purchase price. He was willing and ready to do so, except that the title to the premises was clouded by the Allees' option which prevented the completion of the loan.

"13. The court further finds that at the time the contract between the plaintiff and the defendant Alex Cunningham was executed, the plaintiff had no knowledge of the provisions in said lease concerning an option to buy, and

Custenborder v. Cunningham.

that he had been informed at the time the contract was signed that the only rights that defendants, Roy Allee and F. C. Allee, had on said land were the rights of a tenant, and that the lease expired on March 1, 1923. That plaintiff exercised due diligence and made inquiry concerning the claims of Roy Allee and F. C. Allee and was unable to learn of their option to purchase until after his contract was executed. . . .

### Conclusions of Law.

"4. That the defendant Cunningham being unable to convey a clear and marketable title to the premises on March 2, 1923, is not entitled to a forfeiture of the $863 paid to him by the plaintiff.

"5. That the plaintiff should recover from the defendant Cunningham the sum of $863, paid by him to Cunningham, who has had the use of said money, together with interest thereon at the rate of six per cent per annum from the date of payment, or $942.22."

Judgment was entered accordingly. Defendant appeals, assigning several errors; but no question is raised touching the admissibility of the evidence of the collateral oral understanding between plaintiff and defendant's agent Dawson that a considerable part of the purchase price which plaintiff was to pay for the ten acres was to be raised by a mortgage loan on the property.

To overturn the judgment it is argued in behalf of defendant that he bought the property subject to Allee Brothers' lease. Quite true. But he did not know of the option in that lease which prevented his getting a loan on the property. The lease was not on record. Dawson, the agent who sold him the property, did not know of the option. There is evidence that defendant himself did not actually know of it, and that his first agent, Rucker, had inserted the option in the lease on his own responsibility. When confronted with the option in Allee Brothers' lease, defendant said: "I don't know anything about that; I want to repudiate this paper." If defendant, the owner of the property and principal of Rucker, only acquired belated knowledge of this unrecorded option after plaintiff had contracted for the property, how can he reasonably contend that plaintiff could have learned about the option until it was put on record? The trial court's finding (No. 13) is that plaintiff made diligent but unavailing inquiry touching the nature of Allee Brothers' claim, and that finding was supported by evidence.

Defendant argues that the purchase and sale was to be a cash transaction. Quite true. But defendant had to coöperate to that end. He had to produce such a title as an ordinary mortgage company would loan money upon. That was the collateral understand-

ing between plaintiff and defendant's agent. Plaintiff was ready, willing and able to perform his part of the deal. Altogether he paid defendant $863, which was $663 more than he agreed to pay until a conveyance and title were forthcoming from defendant and until a substantial part of the purchase price could be borrowed by a mortgage on the property. Plaintiff had $1,800 in the bank, and gave defendant's agent his check for that amount. So it would appear that the failure of the deal to go through promptly as a cash transaction was because defendant's former agent Rucker had given an option on the property to Allee Brothers; and this not only prevented the borrowing of the money to complete the later transaction, but clouded the title so that defendant could not have performed his contract with plaintiff even if the latter had handed him the full purchase price in twenty-dollar gold pieces.

We note the negotiations between the parties for delay beyond the fifteenth of July, which was the date fixed in the contract for the purchase price to be paid. Those delays were of mutual advantage. Plaintiff did not want the bargain to fail; he wanted to get the property; he made various efforts and offers to that end; but these incidents all flowed from the fault of defendant, or were at least chargeable to him, since he could not produce a title upon which to procure the requisite loan as contemplated by the parties at the time the contract of sale was made.

Recurring to our initial observation: Since the evidence of the collateral understanding that part of the cash purchase price was to be raised by a mortgage was admitted without objection—at least no specification of error is based on its admission—that understanding was as much a part of the contract as any other feature of it. The result is the contract failed through no fault of plaintiff, but altogether because of the defect in defendant's title and the consequences flowing therefrom; and no court having due regard for either law or justice would permit defendant to keep the partial payments he has received from plaintiff under such circumstances.

The judgment is affirmed.